# Commonwealth *v.* Samuel S. Shober, Appellant.

*Principal and agent—What constitutes the relationship.*

A factor is an agent employed to sell goods consigned to him or delivered to him by or for his principal for a compensation commonly called factorage or commission.

An agreement to sell as factor or consignee certain goods to be shipped by the consignor and further providing that until settlement made all such goods, moneys, accounts, etc., arising from sales of same shall be considered as belonging to consignor and as such to be kept separate and distinct constitutes the relation of principal and agent.

*Criminal law—Agent liable for fruit of illegal transaction.*

If money has been actually paid to an agent, for the use of his principal, the legality of the action of which it was the fruit does not affect the right of the principal to recover it, nor the criminal liability of an agent for embezzlement as consignee.  An agent may not be heard to deny the title of his principal.

*Foreign corporation—Proof of compliance with act of 1874 not required —Embezzlement of agent.*

A foreign corporation having caused its agent to be indicted under section 125 of the act of March 31, 1860, P. L. 411 providing for the punishment of embezzling consignees, the commonwealth is not obliged to prove that the consignor had complied with the act of April 22, 1874, P. L. 108, which makes it unlawful for any foreign corporation to do business in Pennsylvania, without first filing in the office of the secretary of the commonwealth, the statement required by the act.

Argued Nov. 10, 1896.   Appeal, No. 149, Nov. T., 1896, by defendant, from judgment and sentence of Q. S. Lancaster Co., Jan. T., 1895, No. 122, on verdict of guilty.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, ORLADY and SMITH, JJ.   Affirmed. ORLADY, J., dissents.

Indictment for embezzlement as factor and consignee.   Before BRUBAKER, J.

The facts sufficiently appear in the opinion of the Superior Court.

Verdict of guilty and sentence thereon.   Defendant appealed.

*Errors assigned,* seven in number, were directed to the single question whether or not a conviction should have been permitted in view of the evidence as to whether or not the com-

monwealth had proved a compliance with the provisions of the act of 1874 relative to foreign corporations, by the consignor company which it was admitted was a corporation, of the state of Maryland. The exceptions challenged the sufficiency of proof by the commonwealth and assigned as error (6) the following specific portion of the charge of the trial judge: "If you believe the witnesses for the commonwealth, and that the defendant embezzled these moneys of the company, then you ought to find him guilty, no matter whether the prosecutor is a nonresident or not. It would be a shame to the commonwealth of Pennsylvania for people to say we do not mete out justice here to people because they are not residents."

*N. Franklin Hall* and *J. Hay Brown*, with them *W. U. Hensel* for appellant.—Where a foreign corporation has not complied with the act of April 22, 1874, P. L. 108, an indictment cannot be sustained which charges the defendant with embezzlement as consignee in the transaction of business with a corporation doing business under such circumstances: McCanna & Frazer Co. v. Citizens' Trust & Surety Co., 74 Fed. Rep. 597. See also 6 Dist. Rep., 25.

"Where a contract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it:" Holt v. Green, 73 Pa. 198; Johnson v. Hulings, 103 Pa. 504; Armstrong v. Toler, 11 Wheat. 258; Craig v. State of Missouri, 4 Pet. 410.

The provisions of the act of April 22, 1874, it was declared in an opinion delivered by Mr. Justice McCULLOM, "indelibly stamped as unlawful any business transaction in the state by a foreign corporation which has not complied with them. It is only by its observance of them that it can have a legal existence for business purposes within this jurisdiction, or acquire contractual rights which our courts will recognize:" Lasher v. Stimson, 145 Pa. 30; Thorne v. Insurance Company, 80 Pa. 15.

"A foreign corporation which has not complied with the act of April 22, 1874, is not competent to enter into a contract such as that involved in this case;" and any contract made under it is unlawful and void: Atherton v. The city of Wilkesbarre, 3 Kulp, 402.

"No court will lend its aid to a party who grounds his action

upon an immoral or an illegal act. The principle to be extracted from all the cases is, that the law will not lend its support to a claim founded on its own violation: " Holt v. Green, 73 Pa. 198.

*Wm. Aug. Atlee,* with him *B. F. Eshleman* and *George A. Lane,* district attorney, for appellee.

OPINION BY WICKHAM, J., February 16, 1897:

Samuel S. Shober, the defendant, contracted in writing, on June 2, 1893, with the Maryland Fertilizing and Manufacturing Company, to receive and sell in Pennsylvania on commission, as a factor or consignee, land fertilizers, of different kinds, to be shipped to him by the company. . The company was a Maryland corporation.

Among other stipulations of the contract are the following: . " It is also agreed that until settlement is made as herein provided for, all fertilizers and all monies, accounts, notes, liens or evidences of debt arising from sales of same, shall be considered as belonging to the said Maryland Fertilizing and Manufacturing Company, and shall not be estimated or valued in any other manner, and shall be kept separate and distinct from any other business transacted by the said S. S. Shober, until turned over to the said Maryland Fertilizing and Manufacturing Company, as before specified."

Under all the authorities, English and American, the agreement mentioned created the relation of principal and agent, between the defendant and the company. A factor is defined to be " An agent employed to sell goods or merchandise consigned, or delivered, to him, by or for his principal, for a compensation, commonly called factorage or commission : " 1 Bouv. L. D. 640. One selling goods for another is an agent, although paid by a share of the profits, provided that the arrangement falls short of making him a partner. But even a partner, who in a sense is an agent too, is fully subject to the principle of the law of agency hereafter to be considered.

Within a few months after the contract was entered into, the defendant received from his principal, fertilizers of the value of $964, all of which, save a small quantity, valued at $29.00, he sold and received the prices thereof. The company managed to get back the unsold goods; for the rest it has not received a

cent of compensation. When the time for a settlement came, the defendant offered, provided he received a full release, a sum so absurdly small, that the principal's representative refused to consider the offer. Failing to accomplish his purpose, the defendant, although admitting, that from his own standpoint he owed the company over $415—whereof he had $225 then in his pocket—which was demanded of him, utterly refused to pay anything. After being given ample time wherein to make restitution, and thus at least mitigate his offense, during which period he tendered neither explanation nor money, an agent of the consignor made an information against him, under section 125 of the act of March 31, 1860, P. L. 412, providing for the punishment of embezzling consignees or factors. On this information he was indicted and very justly convicted.

It is contended, however, and this is the only defense pressed here, that the defendant should have been acquitted because, as is alleged, the commonwealth failed to fully prove that the consignor had complied with the act of April 22, 1874, P. L. 108, which makes it unlawful for any foreign corporation to do business in Pennsylvania, without first filing, in the office of the secretary of the commonwealth, the statement required by the act, and also provides for the punishment of any one transacting business for such corporation, unless the statutory provisions are first complied with.

The commonwealth was not required to establish the fact in question. It is an elementary rule of the law of agency, applicable alike in civil and criminal proceedings, that the agent shall not be heard to deny the title of his principal. This rule is founded on reason, public policy and common honesty. Nor does it matter whether the goods or money retained or embezzled, by the agent, came to his hands through transactions tainted with illegality. " The contract of the agent to pay the money to his principal is not immediately connected with the illegal transaction, but it grows out of the receipt of the money for his principal: " Story on Agency, sec. 347. " If money has been actually paid to an agent, for the use of his principal, the legality of the action, of which it is the fruit, does not affect the right of the principal to recover it. . . . The agent, whose liability arises solely from the fact of having received money for another's use, can have no pretense to retain it : " Dunlap's

Paley's Agency, 62. " While the law will not enforce an illegal contract, yet if a servant or agent of another has, in the prosecution of an illegal enterprise for his master, received money or other property belonging to his master, he is bound to turn it over to him and cannot shield himself from liability therefor, upon the ground of the illegality of the original transaction : " Wood on Master and Servant, sec. 202. " An agent who has in his hands money belonging to his principal, on a closed or terminable account, cannot set up as a defense to an action by the principal for money had and received, the illegality of a part or of the whole of the transactions : " Whar. on Agency, secs. 26, 250 ; see also to the same effect, Mechem on Agency, sec. 526 ; 1 Am. & Eng. Ency. of Law, 2d ed. 1088. In 2 Bish. Crim. Law, sec. 354, the author says that a servant prosecuted for embezzlement cannot defend on the ground that the master became a wrongdoer by causing the servant to receive the money. The same author remarks (vol. 2, sec. 347), that in the cases on embezzlement, the words " clerk," " agent" and " servant " are employed almost interchangeably.

If a servant obtain money fraudulently for his master and then embezzle it, the offense is complete. Where the servant holds the money for his master, whether the master could have recovered it from the party who paid it is irrelevant: 1 Whar. Crim. Law, secs. 1025, 1038.

The rule, thus announced by all the leading writers on the subject of agency, as well as by all the authors of text books on criminal law who have touched on the subject is no longer open to doubt. It was applied in Sharp v. Taylor, 2 Phillips' Chan. 801, where a partner refused to recognize his copartner's ownership in a vessel and right to an accounting for profits, because they had used the vessel in traffic in a manner violative of the navigation laws of both Great Britain and the United States ; in Tenant v. Elliot, 1 Bos. & P. 3, where the plaintiff's broker effected, for him, an illegal insurance, and on the ground of the illegality tried to withhold from his principal the money paid by the underwriters, and also in other English cases.

These decisions have been approved and followed by the Supreme Court of the United States in McBlair v. Gibbes, 17 How. 232, Law ed., book 15, p. 132, and Brooks v. Martin, 2 Wall. 70 ; Law ed., book 17, p. 732.

In the U. S. Express Co. v. Lucas, 36 Ind. 361, it appeared that the plaintiff had not complied with a statutory, preliminary requisite to warrant it in doing business in Indiana, and its agent, the defendant, interposed this as a defense. It was held that while a suit could not be maintained on the defendant's bond, yet a recovery might be had for money had and received, the court saying, " To hold that an agent is not bound to account for money received by him, is to sanction an act of the grossest dishonesty and bad faith on the part of the agent, without the accomplishment of any equivalent benefit to any one, or to the public." In State v. Tumey, 81 Ind. 559, the agent of a foreign insurance company, when prosecuted for embezzlement, set up the defense, that the company had failed to file a statement in the proper office, as required by statute. It was held insufficient to prevent conviction. In State v. O'Brien, 94 Tenn. 79, likewise a prosecution for embezzlement, a similar defense was held unavailing. It State v. Shadd, 80 Mo. 358, one selling pools, contrary to law, received money in behalf of a purchaser and embezzled it. In was decided that his conviction was proper. The defendant, in Commonwealth v. Smith, 129 Mass. 104, sold liquors contrary to law, in the state of Massachusetts, for his principals living in Ohio, receiving a share of the profits in lieu of salary. The illegality of the business did not save him from conviction, for embezzling his principal's money, received from the goods sold. So, in the same state, it was held that a broker might be guilty of embezzlement for converting to his own use, money placed in his hands for an illegal purpose : Commonwealth v. Cooper, 130 Mass. 285. In State v. Spalding, 24 Kan. 1, Judge BREWER, now of the United States Supreme Court, tersely said, " one who is agent enough to receive money, is agent enough to be punished for embezzling it."

In our own state, while it was held in Thorne v. Ins. Co., 80 Pa. 15, the leading case cited for the appellant, that a foreign corporation, doing an illegal business in Pennsylvania, could not recover on a bond given by its agent to secure the proper performance of his duties, yet it was conceded, in the opinion, that an action would lie against the agent, for money had and received.

The English case of Regina v. Hunt, 8 Carr. & Payne, 642,

hastily decided at nisi prius, has sometimes been cited as not being in harmony with the authorities referred to above. It is, however, easily distinguished from the latter, as was pointed out in Commonwealth v. Smith, supra.

In Regina v. Hunt, it appeared that the society, whereof the defendant was a servant, was made, by statute, absolutely and wholly illegal. In the present case, the corporation was not, inherently an unlawful body. Our statute goes no further than to make its business unlawful, where there has been a failure to comply with the statutory requirements. It may be doubted too, whether any court in America would, to-day, go so far as was done in Regina v. Hunt, in protecting a dishonest servant or agent.

The decision in State v. Williamson, 118 Mo. 146, is not applicable here. In that case a mail carrier attempted to assign money to become due him from the government in the face of an act of congress declaring such an assignment void. He afterwards collected the money and refused to pay his assignee. This was held not to be embezzlement, as the assignment did not divest him of the right to collect for himself, hence he was not the agent of the assignee in receiving the money. At the same time the rule, which governs the present case, was referred to and fully recognized.

It is hardly necessary to say, that actions brought by unlicensed brokers for commissions, by principals on bonds given by agents to secure the performance of their duties in illegal enterprises, and similar cases based on executory contracts, do not fall under the operation of the rule here applied.

The specifications of error are overruled, the judgment affirmed, and it is directed that the record be remitted to the court below, to the end that the sentence may be executed.

ORLADY, J, dissents.